## *In re* VICENTE PÉREZ DÍAZ, querellado.

Núm. 81.—*Sometido:* Abril 23, 1952. *Resuelto:* Abril 30, 1952.

*Rafael Pérez Marchand*, abogado del querellado; *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogado de El Pueblo.

*Per Curiam:* El Fiscal de este Tribunal, por delegación del Procurador General de Puerto Rico, radicó querella de *disbarment* contra el abogado Vicente Pérez Díaz. El 9 de noviembre de 1951 nombramos al Juez Jesús A. González para actuar de *Master* en este caso. Los cargos contra Pérez Díaz son los siguientes:

### "PRIMER CARGO:

Que el querellado, Vicente Pérez Díaz, mientras desempeñaba el cargo de Supervisor de Investigaciones de Leyes del Trabajo III del Fondo del Seguro del Estado, y actuando como Jefe Interino de la División de Reclamaciones del Fondo del Seguro del Estado, allá en y para el día 13 de diciembre de 1948 recibió del Sr. Enrique Martinó Feliú el cheque número 148 del Banco Popular de Puerto Rico por la suma de $538.06 expedido a favor del Fondo del Seguro del Estado por concepto de, y como reembolso por los derechos de subrogación del Fondo del Seguro del Estado en el caso número 6H-21203.

"Que el querellado devolvió al Sr. Martinó dicho cheque y le exigió que le enviara otro por la misma cantidad pero expedido a su nombre y a su favor y el Sr. Martinó así lo hizo, enviándole

el cheque número 150 del Banco Popular de Puerto Rico, Sucursal de Bayamón, por la suma de $538.06 para cubrir los gastos incurridos por el Fondo del Seguro del Estado por concepto de atención médica, dietas y compensación que le fueron brindadas al referido empleado como consecuencia del accidente ocupacional que recibiera en el caso 6H-21203, todo ello en virtud del derecho de subrogación que en dicho caso tenía el Fondo del Seguro del Estado de acuerdo con las disposiciones del artículo 31 de la Ley núm. 45, aprobada en 18 de abril de 1935, sobre Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 de 12 de abril de 1948, ya que el referido empleado, Enrique Martinó Feliú, había recibido con fecha 10 de diciembre de 1948 la suma de $2,000 como compensación de la United States Fidelity & Guaranty Company, compañía aseguradora del Sr. Francisco Miró Sojo, este último la tercera persona responsable del accidente que sufrió el referido Enrique Martinó Feliú con fecha 29 de noviembre de 1947.

"Que el querellado, Vicente Pérez Díaz, recibió el antes mencionado cheque con la *encomienda* por parte del Sr. Enrique Martinó Feliú de que ingresara el montante del mismo en el Fondo del Seguro del Estado o en el Tesoro Insular y el querellado, contrario a la ley, con fecha 15 de diciembre de 1948 endosó y cobró dicho cheque número 150 por la suma de $538.06, y no entregó su importe al Oficial Recaudador del Fondo ni al auxiliar de éste, ni depositó ni ingresó en forma alguna dicha suma de $538.06 en el Fondo del Seguro del Estado ni en el Tesoro Insular, sino que por el contrario se la apropió para su propio y personal beneficio.

"Que con motivo de haberse apropiado el querellado de la antes referida suma de dinero ($538.06) éste fué destituído el día *18 de marzo de 1949* de su cargo de Jefe de la División de Reclamaciones del Fondo del Seguro del Estado, a virtud de un cargo que le fué formulado por el Sr. Ulpiano Vélez, Administrador Interino del Fondo del Seguro del Estado.

"Que después de haber sido destituído, el querellado, con fecha *21 de marzo de 1949* envió al Administrador del Fondo del Seguro del Estado el cheque del gerente número 40047 del Banco Crédito y Ahorro Ponceño, Sucursal de San Juan, por la suma de $538.06 como reembolso al Fondo del Seguro del Estado en virtud del derecho de subrogación que éste último tenía en el antes mencionado caso 6H-21203.

## "Segundo Cargo:

"Que el querellado, Vicente Pérez Díaz, allá en y para el día 28 de julio de 1948 gestionó, cobró y recibió del Sr. Sotero Córdova Rodríguez, empleado lesionado en el caso número 2H-47030 de la oficina del Fondo del Seguro del Estado, la suma de $300, cantidad que le fué entregada en efectivo al querellado por el Lic. Antonio Simonpietri, en representación del lesionado Sotero Córdova, como reembolso al Fondo por los gastos incurridos en atención médica, dietas y compensación brindadas al referido empleado como consecuencia del accidente ocupacional que sufriera en el referido caso 2H-47030, todo ello en virtud del derecho de subrogación que en dicho caso tenía el Fondo, de acuerdo con las disposiciones del artículo 31 de la Ley núm. 45 de 1935, Ley de Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 de 12 de abril de 1948, ya que el referido empleado Sotero Córdova había recibido, con fecha 28 de julio de 1948 la suma de $2,000 como compensación de la Porto Rican & American Insurance Company, compañía aseguradora del patrono, la Autoridad de Comunicaciones de Puerto Rico, esta última la entidad responsable del accidente que sufrió el referido Sotero Córdova con fecha 23 de abril de 1948.

"Que el querellado, Vicente Pérez Díaz, recibió la antes referida suma de dinero en efectivo de parte del Lic. Antonio Simonpietri, en representación del lesionado Sotero. Córdova, con la encomienda de que ingresara el montante de la misma en el Fondo del Seguro del Estado o en el Tesoro Insular, y el querellado recibió dicho importe y no entregó el mismo al Oficial Recaudador ni al auxiliar de éste, ni depositó ni ingresó en forma alguna dicha suma de dinero en el Fondo ni en el Tesoro Insular, sino que por el contrario se la apropió para su propio y personal beneficio.

"Que después de haberse iniciado una investigación por la oficina del Auditor de Puerto Rico en la División de Reclamaciones del Fondo del Seguro del Estado de los casos en que intervino el querellado, éste, con fecha 22 de agosto de 1950, envió al Tesorero de Puerto Rico el cheque del gerente número 22199 del Crédito y Ahorro Ponceño, Sucursal de Río Piedras, por la suma de $300, como reembolso al Fondo, en virtud del derecho de subrogación que este último tenía en el caso 2H-47030, dinero que había sido entregado por el lesionado al querellado el día 28 de

julio de 1948 para ser ingresado en el Fondo del Seguro del Estado o en el Tesoro Insular, cantidad que no ha sido ingresada en el Tesoro Insular porque el Fondo del Seguro del Estado, con fecha 3 de febrero de 1950, radicó ante el Tribunal de Distrito de Puerto Rico, Sección de San Juan, bajo el número 50-372, una demanda contra la Porto Rican & American Insurance Company para reclamar la suma de $1,697.17, cantidad que representa lo totalmente adeudado al Fondo por derecho de subrogación por concepto de los gastos incurridos por el Fondo por dietas, atención médica y compensación que le fueron brindadas al referido empleado como consecuencia del accidente ocupacional que recibiera en el caso 2H-47030.

"Que el querellado, a pesar de que los gastos incurridos por el Fondo del Seguro del Estado en atención médica, dietas y compensación brindadas al referido lesionado como consecuencia del accidente ocupacional que sufriera en el citado caso 2H-47030, ascendían a la suma de $1,697.17, según la liquidación oficial de la División de Contabilidad del Fondo, transigió la reclamación del Fondo por la suma de $300 sin la autorización del Administrador del Fondo del Seguro del Estado y sin haber obtenido la aprobación para tal transacción del Procurador General de Puerto Rico, todo ello en violación del artículo 31 de la Ley núm. 45, aprobada en 18 de abril de 1935, sobre Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, perjudicando en esta forma las finanzas del Fondo del Seguro del Estado y el erario público y constituyendo además su actuación una infracción a los artículos 81 y 93 del Código Penal.

### "TERCER CARGO:

"Que el querellado, Vicente Pérez Díaz, en el caso del obrero Raúl Trías Conde, no obstante tener conocimiento que los gastos incurridos por el Fondo del Seguro del Estado en atención médica, dietas y compensación brindadas al referido lesionado, como consecuencia del accidente ocupacional que sufriera en el caso número 2H-44296 de la oficina del Fondo del Seguro del Estado ascendían a la suma de $962.23, según la liquidación oficial de la División de Contabilidad del Fondo, transigió la reclamación del Fondo por la suma de $510 sin la autorización del Administrador del Fondo del Seguro del Estado y sin haber obtenido la aprobación para tal transacción del Procurador General

de Puerto Rico, todo ello en violación del artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo, aprobada en 18 de abril de 1935, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, perjudicando con su actuación el estado financiero del Fondo y el erario público y constituyendo además su actuación un delito público y una infracción a los artículos 81 y 93 del Código Penal.

### "CUARTO CARGO:

"Que el querellado, Vicente Pérez Díaz, allá en y para el día 9 de diciembre de 1948 gestionó, cobró y recibió del lesionado José Donate Vázquez, por conducto de su abogado, el Lic. Jorge de la Cruz, la suma de $50, cantidad que le fué entregada en efectivo como reembolso al fondo del Seguro del Estado por los gastos incurridos en atención médica, dietas y compensación brindadas al referido lesionado como consecuencia del accidente ocupacional que sufriera en el caso 2G-18464, todo ello en virtud del derecho de subrogación que en dicho caso tenía el Fondo, de acuerdo con las disposiciones del artículo 31 de la Ley núm. 45 de 1935, Ley de Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, ya que el referido lesionado José Donate Vázquez había recibido, con fecha 8 de diciembre de 1948, la suma de $300 como compensación de la United States Casualty Company, compañía aseguradora del patrono Farmacia La Cruz, esta última la entidad responsable del accidente que sufrió el referido José Donate Vázquez con fecha 29 de octubre de 1948.

"Que el querellado recibió la antes referida suma de dinero en efectivo de parte del Lic. Jorge de la Cruz, en representación del lesionado José Donate Vázquez, con la encomienda de que ingresara el montante de la misma al Fondo del Seguro del Estado o al Tesoro Insular, y el querellado recibió dicho importe y no entregó el mismo al Oficial Recaudador del Fondo ni al auxiliar de éste, ni depositó ni ingresó en forma alguna dicha suma de dinero en el Fondo del Seguro del Estado ni en el Tesoro Insular, sino que por el contrario se la apropió para su propio y personal beneficio.

"Que después de haberse iniciado una investigación por la oficina del Auditor de Puerto Rico en la División de Reclamaciones del Fondo del Seguro del Estado de los casos en que intervino el querellado, éste, con fecha 2 de septiembre de 1949, envió al

al Tesorero de Puerto Rico el cheque número 19045 del Banco Crédito y Ahorro Ponceño, Sucursal de Río Piedras, por la suma de $40 acompañado de una carta con el nombre en maquinilla de José Donate Vázquez.

"Que el querellado, a pesar de que los gastos incurridos por el Fondo del Seguro del Estado en atención médica, dietas y compensación brindadas al referido lesionado como consecuencia del accidente ocupacional que sufriera en el citado caso 2G-18464 ascendían a la suma de $152.74, según la liquidación oficial de la División de Contabilidad del Fondo, transigió la reclamación del Fondo por la suma de $50 sin la autorización del Administrador del Fondo del Seguro del Estado y sin la aprobación del Procurador General de Puerto Rico, todo ello en violación del artículo 31 de la Ley núm. 45, aprobada en 18 de abril de 1935, sobre Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, perjudicando en esta forma las finanzas del Fondo del Seguro del Estado y el erario público y constituyendo además su actuación una infracción a los artículos 81 y 93 del Código Penal.

"QUINTO CARGO:

"Que el querellado, Vicente Pérez Díaz, allá en y para el día 3 de marzo de 1949 gestionó, cobró y recibió del lesionado Víctor M. Viera Zayas, por conducto de su abogado el Lic. Antonio Simonpietri, la suma de $200, cantidad que le fué entregada en efectivo como reembolso al Fondo del Seguro del Estado por los gastos incurridos en atención médica, dietas y compensación brindadas al referido empleado como consecuencia del accidente ocupacional que sufriera en el referido caso 2G-24954, todo ello en virtud del derecho de subrogación que en dicho caso tenía el Fondo, de acuerdo con las disposiciones del artículo 31 de la Ley núm. 45 de 1935, Ley de Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, ya que el referido Víctor M. Viera Zayas había recibido, con fecha 3 de marzo de 1949, la suma de $1,500 como compensación de la Porto Rican & American Insurance Company, compañía aseguradora de la United Dairies, Inc., esta última la entidad responsable del accidente que sufrió el referido Víctor M. Viera Zayas el día 3 de enero de 1949.

"Que el querellado recibió de parte del Lic. Antonio Simonpietri, en representación de su cliente el lesionado Víctor M. Viera Zayas, la antes referida suma de dinero en efectivo con la

encomienda de que ingresara el montante de la misma al Fondo del Seguro del Estado o al Tesoro Insular, y el querellado recibió dicho importe y no entregó el mismo al Oficial Recaudador del Fondo ni al auxiliar de éste, ni depositó ni ingresó en forma alguna dicha suma de dinero en el Fondo del Seguro del Estado ni en el Tesoro Insular, sino que por el contrario se la apropió para su propio y personal beneficio.

"Que después de haberse iniciado una investigación por la oficina del Auditor de Puerto Rico en la División de Reclamaciones del Fondo del Seguro del Estado de los casos en que intervino el querellado, éste envió el cheque del gerente número 18927 del Banco Crédito y Ahorro Ponceño, Sucursal de Río Piedras, fechado el 17 de agosto de 1949 y expedido a favor del Tesorero de Puerto Rico, por la suma de $200 como derecho de subrogación del Fondo del Seguro del Estado por los gastos incurridos por dicho Fondo en el caso 2G-24954, dinero que ingresó en el Tesoro.

"Que el querellado, en el caso del referido lesionado Víctor M. Viera Zayas, no obstante tener conocimiento que los gastos incurridos por el Fondo del Seguro del Estado en atención médica, dietas y compensación brindadas al referido lesionado como consecuencia del accidente ocupacional que sufriera en el caso número 2G-24954 del Fondo del Seguro del Estado, ascendían a la suma de $827.54, según la liquidación oficial de la División de Contabilidad del Fondo del Seguro del Estado, transigió la reclamación del Fondo por la suma de $200 sin la autorización del Administrador del Fondo y sin haber obtenido la aprobación para tal transacción del Procurador General de Puerto Rico, todo ello en violación del artículo 31 de la Ley núm. 45, aprobada en 18 de abril de 1935, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, perjudicando con su actuación el erario público y el estado financiero del Fondo del Seguro del Estado y constituyendo además su conducta un delito público y una infracción a los artículos 81 y 93 del Código Penal.

## "Sexto Cargo:

"Que el querellado, Vicente Pérez Díaz, allá en o por el día 13 de octubre de 1948 gestionó, cobró y recibió del lesionado Raimundo Navarro Nieves, por conducto de su abogado el Lic. Antonio Simonpietri, la suma de $100, cantidad que le fué entregada en efectivo como reembolso al Fondo del Seguro del Estado por los gastos incurridos en atención médica, dietas y compensación

brindadas al referido lesionado como consecuencia del accidente ocupacional que sufriera en el caso 2G-4, todo ello en virtud del derecho de subrogación que en dicho caso tenía el Fondo, de acuerdo con las disposiciones del artículo 31 de la Ley núm. 45 de 1935, Ley de Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, ya que el referido lesionado, Raimundo Navarro ·Nieves, había recibido con fecha 13 de octubre de 1948, la suma de $450 como compensación de la Porto Rican & American Insurance Company, compañía aseguradora del patrono, Gobierno de la Capital, este último la entidad responsable del accidente que sufriera el referido Raimundo Navarro Nieves con fecha 2 de julio de 1948.

"Que el querellado recibió la antes referida suma de dinero en efectivo de parte del Lic. Antonio Simonpietri, en representación del lesionado Raimundo Navarro Nieves, con la encomienda de que ingresara el montante de la misma al Fondo del Seguro del Estado o al Tesoro Insular, y el querellado recibió dicho importe y no entregó el mismo al Oficial Recaudador del Fondo ni al auxiliar de éste, ni depositó ni ingresó en forma alguna dicha suma de dinero en el Fondo del Seguro del Estado ni en el Tesoro Insular, sino que por el contrario se la apropió para su propio y personal beneficio.

"Que después de haberse iniciado una investigación por la oficina del Auditor de Puerto Rico en la División de Reclamaciones del Fondo del Seguro del Estado de los casos en que intervino el querellado, éste envió el cheque del gerente número 18928 del Crédito y Ahorro Ponceño, Sucursal de Río Piedras, fechado el 17 de agosto de 1949 y expedido a favor del Tesorero de Puerto Rico por la suma de $100 como subrogación del Fondo por los gastos incurrido por dicho Fondo en el referido caso 2G-4.

"Que el querellado, en el antes mencionado caso 2G-4 de la oficina del Fondo del Seguro del Estado, no obstante tener conocimiento que los gastos incurridos por el Fondo en atención médica, dietas y compensación brindadas al referido lesionado ascendían a la suma de $304.75, según la liquidación oficial de la División de Contabilidad del Fondo, transigió la reclamación del Fondo por la suma de $100 sin la autorización del Administrador del Fondo del Seguro del Estado y sin haber obtenido la aprobación para tal transacción del Procurador. General de Puerto Rico, todo ello en violación del artículo 31 de la Ley núm. 45, aprobada el 18 de abril de 1935, según fué enmendada por la Ley

núm. 16 del 12 de abril de 1948, perjudicando con su actuación el estado financiero del Fondo del Seguro del Estado y el erario público y constituyendo además su actuación una infracción a los artículos 81 y 93 del Código Penal.

"SÉPTIMO CARGO:

"Que el querellado, Vicente Pérez Díaz, allá en y para el día 11 de junio de 1948 gestionó, cobró y recibió del lesionado Félix Torres la suma de $100, cantidad que le fué entregada como reembolso por los gastos incurridos por el Fondo del Seguro del Estado por atención médica, dietas y compensación brindadas al referido empleado como consecuencia del accidente ocupacional que sufriera en el caso 2H-33529, todo ello en virtud del derecho de subrogación que en dicho caso tenía el Fondo, de acuerdo con las disposiciones del artículo 31 de la Ley núm. 45 de 1935, Ley de Compensaciones por Accidentes del Trabajo, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, ya que el referido Félix Torres había recibido, con fecha 11 de junio de 1948, la suma de $175 como compensación de la Great American Indemnity Company, compañía aseguradora del Sr. Emilio Núñez González, este último la tercera persona responsable del accidente que sufriera el referido Félix Torres el día 1º de marzo de 1948.

"Que el querellado recibió la antes referida suma de dinero en efectivo de parte del empleado lesionado Félix Torres con la encomienda de que ingresara el montante de la misma en el Fondo del Seguro del Estado o en el Tesoro Insular, y el querellado recibió dicho importe y no entregó el mismo al Oficial Recaudador del Fondo ni al auxiliar de éste, ni depositó, ni ingresó en forma alguna dicha suma de dinero en el Fondo del Seguro del Estado ni en el Tesoro Insular, sino que por el contrario se la apropió para su propio y personal beneficio.

"Que el querellado, en el antes mencionado caso 2H-33529, no obstante tener conocimiento que los gastos incurridos por el Fondo del Seguro del Estado en atención médica, dietas y compensación brindadas al referido lesionado como consecuencia del accidente ocupacional que sufriera en el referido caso 2H-33529, ascendían a la suma de $146.99, según la liquidación oficial de la División de Contabilidad del Fondo del Seguro del Estado, firmó un 'release' transigiendo los derechos del Fondo por la suma de $1.00 sin la autorización del Administrador del Fondo del Seguro del Estado y sin haber obtenido la aprobación para tal transac-

ción del Procurador General de Puerto Rico, todo ello en violación del artículo 31 de la Ley núm. 45, aprobada el 18 de abril de 1935, según fué enmendada por la Ley núm. 16 del 12 de abril de 1948, perjudicando en esta forma las finanzas del Fondo del Seguro del Estado y el erario público y constituyendo su actuación una infracción a los artículos 81 y 93 del Código Penal.

### "ALEGACIÓN GENERAL:

"Que en todos y cada uno de los anteriores cargos los hechos ocurrieron mientras el querellado desempeñaba el cargo de Supervisor de Investigaciones de Leyes del Trabajo III del Fondo del Seguro del Estado, pero actuando como Jefe Interino de la División de Reclamaciones del Fondo, y mientras desempeñaba tal cargo, alegación que hicimos en el primer cargo y que reproducimos y hacemos formar parte de los demás.

"Que los hechos imputados al querellado son constitutivos de infracciones a los artículos 81 y 93 del Código Penal (delito público) y una infracción al artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo, además de constituir su actuación conducta inmoral censurable e impropia, así como serios incumplimientos de sus deberes como abogado y notario."

Celebradas varias vistas y presentada evidencia oral y documental de ambas partes, el Master llegó a las siguientes conclusiones de hecho:

### "PRIMER CARGO:

#### "Enrique Martinó Feliú

"1. El querellado el día 13 de diciembre de 1948, mientras desempeñaba el cargo de Supervisor de Investigaciones de Leyes del Trabajo III del Fondo del Seguro del Estado y mientras actuaba como Jefe de la División de Reclamaciones, gestionó y recibió del lesionado Enrique Martinó Feliú el cheque número 148 del Banco Popular de Puerto Rico por la suma de $538.06 expedido a favor del Fondo del Seguro del Estado como reembolso por los derechos de subrogación en el caso 6H-21203. (*Exhibit* A, cheque, Exhibit I, carta de Atiles Moréu nombrándolo Supervisor de Leyes del Trabajo III, Jefe de la División de Reclamaciones).

"2. El querellado devolvió el cheque número 148 al lesionado Enrique Martinó Feliú y le pidió que extendiera otro por la

misma cantidad a favor del querellado, requiriéndole el envío del cheque en un sobre que envió con el chófer Vidal Vázquez y con una nota hecha por el querellado que dice: 'Debido a que es una cuenta distinta hágase cheque a nombre de Vicente Pérez Díaz para así yo endosarlo a la cuenta de subrogación.' (Exhibit B, sobre con nota).

"3. Que Enrique Martinó Feliú envió al querellado y éste recibió, el cheque número 150 del Banco Popular, Sucursal de Bayamón, por la suma de $538.06 y lo endosó y lo cambió apropiándose el importe sin ingresarlo en el Fondo del Seguro del Estado ni en el Tesoro Insular, ni lo entregó al Oficial Recaudador del Fondo. (Exhibits B, C, y D, cheque, nota de certificación y sobre).

"4. Que el querellado no estaba autorizado para recibir dinero o valor alguno en casos de subrogación ni en ningún otro caso.

"5. Que el querellado fué destituído el día 18 de marzo de 1949 del cargo de Jefe de la División de Reclamaciones por haberse apropiado el importe de $538.06 que le fueron entregados por Enrique Martinó Feliú para ingresarlo en el Fondo por derecho de subrogación. (Exhibit J, cargo).

"6. Que al querellado se le concedieron diez días para contestar el cargo que se le formuló y no lo contestó ni estableció recurso de apelación para ante la Oficina de Personal. (Exhibits J, K y L, pliego de cargo, notificación a Personal y certificación negativa de apelación).

"7. Que el día 21 de marzo de 1949 el querellado envió al Administrador del Seguro del Estado el cheque del Gerente número 40047 del Banco Crédito y Ahorro Ponceño por la suma de $538.06. (Exhibit N, fotocopia del cheque).

"8. En relación con este caso (Enrique Martinó Feliú) se radicó una demanda en la Corte de Distrito de Bayamón, hoy Tribunal de Distrito de Puerto Rico, Sección de Bayamón, bajo el número R-4542, y el querellado firmó una estipulación sin estar autorizado para ello por el Administrador del Fondo del Seguro del Estado y además de firmarla en su carácter de Jefe de la División de Reclamaciones del Fondo del Seguro del Estado, la firmó también como *abogado* del Administrador del Fondo. (Exhibit E, expediente caso R-4542).

"En relación con este caso se presentaron además los Exhibits F, G, H, M, I, O y P.

*"Prueba Testifical:*

"1. Enrique Martinó Feliú
2. Vidal Vázquez
3. Lic. Juan Enrique Géigel
4. Eladia Calcaño de Santiago
5. Lic. Guillermo Atiles Moréu

"Segundo Cargo:

"Sotero Córdova Rodríguez

"1. El lesionado Sotero Córdova, en el caso 2H-4703, recibió una compensación de $2,200.00 (la querella hace referencia a $2,000.00) de la Porto Rican & American Insurance Company, compañía aseguradora del patrono, Autoridad de Comunicaciones. El Lic. Antonio Simonpietri, abogado del lesionado, recibió de éste (Sotero Córdova) la suma de $300 para que se los entregara al Lic. Vicente Pérez Díaz y éste, a su vez, los entregara al Fondo del Seguro del Estado como derecho de subrogación. El Lic. Simonpietri entregó dicha suma al querellado Vicente Pérez Díaz a requerimiento de éste (Pérez Díaz) por el concepto anteriormente expresado y el querellado los recibió y se los apropió en su beneficio. (Exhibit Q, carta de pago y convenio.—Exhibit R, cheque de $2,200).

"2. Quedó establecido por la prueba que cuando ya el querellado había sido destituído y mucho tiempo después, en una conferencia que celebraron el Lic. Simonpietri, el Lic. Carlos N. Souffront, abogado del Fondo, y el querellado, éste le hizo entrega al Lic. Souffrount de un cheque por $300 para cubrir los gastos del Fondo en este caso y dos cheques más, uno por $100 y otro por $200, para cubrir los gastos del Fondo en los caso de Víctor M. Viera Zayas y Raimundo Navarro Nieves. El Lic. Souffront le informó que recibía dichos cheques condicionados a que él (Souffront) hablara con el Administrador del Fondo para determinar la actuación en cuanto a los mismos y así lo hizo, y devolvió los cheques al querellado para que los enviara por conducto oficial. El querellado, con fecha 22 de agosto de 1950, envió al Tesorero de Puerto Rico el cheque del Gerente·número 22199 del Banco Crédito y Ahorro Ponceño, Sucursal de Río Piedras, por la suma de $300. (Exhibit S, copia fotostática del cheque por $300.)

"3. Que este cheque número 22199 (Exhibit S) fué recibido en el Tesoro Insular pero no ha sido ingresado en los fondos pú-

blicos porque los gastos incurridos por el Fondo en el caso del referido lesionado ascienden a la suma de $1,697.17, según la liquidación oficial de la División de Contabilidad del Fondo, y con fecha 3 de febrero de 1950 se radicó ante el Tribunal de Distrito de Puerto Rico, Sección de San Juan, una demanda contra la Porto Rican & American Insurance Company para reclamar la suma de $1,697.17, cantidad que representa lo adeudado al Fondo por derecho de subrogación (Exhibit T, demanda sobre daños y perjuicios, caso 50–372.)

"4. Que el querellado transigió los derechos de subrogación del Fondo en este caso por la suma de $300 cuando los gastos del Fondo ascendían a $1,697.17, sin haber obtenido la autorización del Administrador del Fondo del Seguro del Estado y sin la aprobación del Procurador General. (Exhibit U.)

"5. Que después de haber sido transigido el caso y estando el mismo liquidado y cerrado, el querellado con fecha 28 de julio de 1948, en la carpeta del expediente del caso le puso una nota con su firma dirigida a la Zona (que es una de las divisiones por pueblos en que está dividido el trabajo en casos de subrogación) que dice: *'Zona, cuando cierre el caso pásemelo para estudio de subrogación.* Fecha 9–9–48.' (Exhibit V, carpeta con la nota.)

"*Prueba Testifical:*
"1. Sotero Córdova Rodríguez
2. Lic. Antonio Simonpietri
3. Eladia Calcaño de Santiago
4. Lic. Carlos N. Souffront
5. Lic. Guillermo Atiles Moréu
6. José R. Pedrogo

"TERCER CARGO:
"Raúl Trías Conde

"1. Quedó establecido por la evidencia testifical y documental que el querellado transigió los derechos de subrogación del Fondo del Seguro del Estado en este caso por la suma de $510 cuando los gastos del Fondo ascendían a la suma de $962.23, según la liquidación oficial de la División de Contabilidad del Fondo. (Exhibit W, expediente con borderó, carta de 6 de octubre, convenio transacción y liquidación.—Exhibit X, cheque por $510.— Exhibit Y, varias cartas de Pérez Díaz.)

"2. Quedó establecido por la prueba que el querellado le notificó al Administrador del Fondo una posible transacción en este

caso, pero nunca el Administrador dió su autorización para la misma y tampoco obtuvo el querellado la aprobación del Procurador General para la misma. (Exhibits Y, Z, Z($^1$) y W, convenio de transacción por $510.)

"*Prueba Testifical:*
"1. Raúl Trías Conde
2. Eladia Calcaño de Santiago
3. Lic. Guillermo Atiles Moréu

## "CUARTO CARGO:
"José Donate Vázquez

"1. De la prueba testifical y documental quedó establecido que el lesionado José Donate Vázquez recibió en el caso 2G-18464 la suma de $300 como compensación de la United States Casualty Company, compañía aseguradora del patrono, Farmacia La Cruz. (Exhibit FF, documento de transacción).

"2. De esa suma el lesionado le entregó $50 a su abogado, el Lic. Jorge de la Cruz, para que éste, a su vez, los entregara, como en efecto entregó a fines de diciembre de 1948, al Lic. Vicente Pérez Díaz, y a requerimiento de éste, como derecho de subrogación del Fondo en este caso y para ser ingresados en el Tesoro Insular. Que el querellado recibió los referidos $50 con el propósito anteriormente expresado y se los apropió y no los entregó al Oficial Recaudador del Fondo del Seguro del Estado ni los ingresó en el Tesoro Insular.

"3. Que con fecha 2 de septiembre de 1949 el querellado envió al Tesorero de Puerto Rico el cheque número 19045 del Banco Crédito y Ahorro Ponceño, Sucursal de Río Piedras, por la suma de $40, acompañado de una carta con el nombre en maquinilla de José Donate Vázquez. (Exhibit AA, carta del Gerente del Crédito y Ahorro Ponceño con copia fotostática del cheque 19045.—Exhibit CC, carta al Fiscal Freyre y copia carta al Tesorero.)

"4. Quedó establecido que José Donate Vázquez no envió carta alguna al Tesorero remitiendo dicha suma de dinero ni cantidad alguna, ni autorizó a persona alguna a redactarla y enviarla a su nombre. (Exhibit CC, supra.)

"5. Se probó, además, que los gastos incurridos por el Fondo en el caso de este lesionado ascendieron a la suma de $152.74, según la liquidación oficial de la División de Contabilidad del Fondo, y el querellado transigió dicho caso por $50, cantidad que

recibió y se apropió, y posteriormente envió solamente $40 al Tesorero de Puerto Rico. (Exhibits DD, AA y EE.)

"6. Que para hacer la anterior transacción el querellado no obtuvo la autorización del Administrador del Fondo del Seguro del Estado ni la aprobación del Procurador General. (Exhibits FF y CC.)

"7. Que no obstante haber transigido el caso a fines de diciembre de 1948 en un blanco de 'informe médico especial', y dirigiéndose a una de las zonas, puso bajo su firma la siguiente nota: *'Zona, cuando liquide pásemelo. 1–24–49'*. (Exhibit BB.)

*"Prueba Testifical:*

"1. José Donate Vázquez
 2. Lic. Jorge de la Cruz
 3. Eladia Calcaño de Santiago
 4. Lic. Guillermo Atiles Moréu
 5. Lic. Carlos N. Souffront

"QUINTO CARGO:
"Víctor M. Viera Zayas

"1. Quedó probado que el lesionado Víctor M. Viera Zayas recibió, con fecha 3 de marzo de 1949, la suma de $1,500 de la Porto Rican & American Insurance Company, compañía aseguradora de la United Dairies, Inc. (Exhibit KK.)

"2. De esa suma de dinero el lesionado Víctor M. Viera entregó a su abogado el Lic. Antonio Simonpietri la suma de $200 para que éste, a su vez, los entregará al Lic. Vicente Pérez Díaz, a requerimiento de este último, para ingresarlos en el Fondo o en el Tesoro Insular por los derechos de subrogación del Fondo en este caso, y el Lic. Simonpietri hizo entrega de la referida suma de dinero al Lic. Vicente Pérez Díaz y éste se la apropió en su su propio beneficio y no la entregó al Oficial Recaudador del Fondo del Seguro del Estado ni la ingresó en el Tesoro Insular.

"3. También se estableció por la prueba que el querellado, después de haber sido destituído (18 de marzo de 1949), entregó un cheque por $200 al Lic. Carlos N. Souffront y éste se lo devolvió para que lo enviara por los canales oficiales.

"4. El querellado, con fecha 17 de agosto de 1949 y después de haberse iniciado una investigación por la oficina del Auditor de Puerto Rico, envió el cheque del gerente número 18927 a favor del Tesorero de Puerto Rico por la suma de $200 con una carta con el nombre de Víctor M. Viera, en maquinilla. (Exhibit GG, fotocopia cheque por $200.—Exhibit HH.)

"5. Quedó probado, además, que Víctor M. Viera no envió carta alguna al Tesorero acompañada de cheque alguno ni autorizó a persona alguna a redactarla y enviarla a su nombre. (Exhibit HH.)

"6. Se probó, además, que los gastos incurridos por el Fondo en este caso ascendieron a la suma de $827.54, según la liquidación oficial de la División de Contabilidad del Fondo, y el querellado transigió los derechos de subrogación del Fondo por la antes referida suma de dinero—$200—sin haber obtenido la autorización del Administrador del Fondo ni la aprobación del Procurador General. (Exhibit II.)

"*Prueba Testifical:*
  "1. Víctor M. Viera Zayas
   2. Lic. Antonio Simonpietri
   3. Eladia Calcaño de Santiago
   4. Lic. Guillermo Atiles Moréu
   5. Lic. Carlos N. Souffront

"Sexto Cargo:
"Raimundo Navarro Nieves

"1. Quedó establecido por la prueba que el querellado, el día 13 de octubre de 1948 cobró y recibió del Lic. Antonio Simonpietri, en representación del lesionado Raimundo Navarro Nieves, la suma de $100, cantidad que le fué entregada en efectivo como derecho de subrogación del Fondo del Seguro del Estado en el caso 2G-4 con la encomienda de que lo ingresara al Fondo del Seguro del Estado o en el Tesoro Insular y el querellado se la apropió para su propio y personal beneficio, ya que el lesionado había recibido $450 como compensación de la Porto Rican & American Insurance Company, compañía aseguradora del patrono, Gobierno de la Capital, entidad responsable del accidente que sufrió el lesionado. (Exhibit LL.)

"2. Se estableció por la prueba que los gastos del Fondo en este caso ascendieron a la suma de $304.75 y el querellado transigió los derechos del Fondo por la suma de $100 sin la autorización del Administrador del Fondo y sin la aprobación del Procurador General. (Exhibits LL, MM, NN y OO.)

"3. Con fecha 17 de agosto de 1949 el querellado envió al Tesorero de Puerto Rico el cheque número 18928 del Banco Crédito y Ahorro Ponceño, Sucursal de Río Piedras, por la suma de $100, acompañada de una carta con el nombre en maquinilla de Raimundo Navarro Nieves. (Exhibit NN.)

*"Prueba Testifical:*
"1. Lic. Antonio Simonpietri
2. Eladia Calcaño de Santiago
3. Lic. Guillermo Atiles Moréu

"SÉPTIMO CARGO:
"Félix Torres Santiago

"1. Se probó que el lesionado Félix Torres, en el caso 2H-33529 recibió de la compañía aseguradora Great American Indemnity Company, compañía aseguradora del señor Emilio Núñez, la suma de $175.

"2. Que el lesionado llevó a la oficina del abogado Vicente Pérez Díaz, en el Fondo del Seguro del Estado, la suma de $100 para cubrir los derechos de subrogación del Fondo en este caso, dinero que llevó a la oficina del querellado, estando presente el querellado cuando se entregó el mismo, pero no aparece claramente si se le entregó a él personalmente o a su secretaria, dinero que no fué ingresado en el Fondo del Seguro del Estado ni en el Tesoro Insular.

"3. Que el querellado, a pesar de que los gastos del Fondo ascendieron a la suma de $146.99 transigió los derechos de subrogación del Fondo del Seguro del Estado por la suma de $100 y le firmó a la compañía aseguradora, Compañía Carrión, Inc., un documento de relevo por $1, dinero que tampoco ingresó en el Fondo del Seguro del Estado ni al Tesoro Insular.

"4. Se probó que el Fondo del Seguro del Estado no obtuvo dinero por concepto de este caso.

"5. Se estableció que los hechos de este caso ocurrieron el día 1º de marzo de 1948, fecha en que no estaba en vigor la Ley núm. 16 de 12 de abril de 1948, enmendatoria de la Ley núm. 45 de 1935, enmienda que requiere que para poderse transigir los derechos del Fondo en cualquier caso hay que obtener la autorización del Administrador del Fondo y la aprobación del Procurador General. (Exhibits PP y QQ.)

*"Prueba Testifical:*
"1. Félix Torres Santiago
2. Eladia Calcaño de Santiago
3. Lic. Guillermo Atiles Moréu
4. Ángel M. Montes

"Hechos Adicionales Probados Relacionados con los
Cargos 2, 4, 5, 6 y 7:

"1. Quedó probado que a pesar de que existían distintos criterios en la oficina del Fondo del Seguro del Estado en cuanto a si antes de regir la Ley 16 de 12 de abril de 1948, que enmendaba el artículo 31 de la Ley 45 de 1935, deberían cobrarse todos los gastos o solamente la compensación en los casos de subrogación, pero el Administrador estableció la regla que deberían cobrarse todos los gastos.

"2. Que tanto bajo la Ley 45 de 1935 como bajo la nueva ley, el Administrador del Fondo nunca autorizó a Vicente Pérez Díaz a transigir caso alguno por no tener él (Atiles Moréu) facultad para ello ni estar dentro de las tareas del querellado aprobadas por la Oficina de Personal el transigir caso alguno. (Exhibit O.)

"3. Que el Procurador General en ningún momento aprobó transacción alguna de las llevadas a cabo en los cargos 2, 3, 4, 5, 6 y 7. (En el último caso cuando ocurrieron los hechos todavía no estaba en vigor la Ley 16 de 1948.—Véase declaración de Raúl Torres, encargado archivo Departamento de Justicia.)

"4. Que el querellado no estaba autorizado para recibir dinero o valores en ningún caso.

"5. Que los hechos del accidente en los cargos 2, 3, 4, 5 y 6 en que los lesionados fueron atendidos por el Fondo del Seguro del Estado y en los que tenía derecho a subrogarse, ocurrieron después de estar en vigor la Ley 16 de 12 de abril de 1948 que expresamente requiere la autorización del Administrador del Fondo del Seguro del Estado así como la aprobación del Procurador General para que pueda realizarse transacción alguna.

"6. De acuerdo con la prueba presentada, los accidentes en estos casos ocurrieron en las siguientes fechas:

"Cargo I — Enrique Martinó Feliú
Caso 6H-21203
Fecha acc.: 29 de noviembre de 1947

Cargo II — Sotero Córdova Rodríguez
Caso 2H-47030
Fecha acc.: 23 de abril de 1948

Cargo III — Raúl Trías Conde
Caso 2H-44296
Fecha acc.: 23 de abril de 1948

Cargo IV    — José Donate Vázquez
              Caso 2G-18464
              Fecha acc.: 29 de octubre de 1948
Cargo V     — Víctor M. Viera Zayas
              Caso 2G-42954
              Fecha acc.: 3 de enero de 1949
Cargo VI    — Raimundo Navarro Nieves
              Caso 2G-4
              Fecha acc.: 2 de julio de 1948
Cargo VII   — Félix Torres Santiago
              Caso 2H-33529
              Fecha acc.: 1º de marzo de 1948

"7. Quedó establecido por la prueba que José R. Pedrogo, Inspector de Auditoría, recibió una comunicación del Auditor de Puerto Rico el día 27 de abril de 1949 para que practicara una investigación en el Fondo del Seguro del Estado de los casos de subrogación y éste la inició pocos días después de haber recibido dicha orden y al terminarla rindió el informe correspondiente.

"8. Que de acuerdo con la investigación practicada por José R. Pedrogo, y según su testimonio, de los casos de subrogación en los cargos que se le imputaron al querellado, el Fondo se perjudicó o dejó de percibir la suma de *$2,665.42,* después de descontarse las cantidades enviadas por el querellado al Tesorero de Puerto Rico, mucho tiempo después de terminada la investigación y cuando ya el querellado había sido destituído.

"9. Que cuando el querellado fué nombrado Jefe de la División de Reclamaciones reunió a los inspectores del Fondo y les dió instrucciones sobre el trabajo a realizarse.

"10. Quedó establecido por la prueba, además, que el querellado conocía las disposiciones de la Ley 16 de 12 de abril de 1948. (Véanse los Exhibits F, H, U y W, cartas de 8 de abril de 1948, 24 de junio de 1948 y 2 de julio de 1948, todas dirigidas por Vicente Pérez Díaz a la Porto Rican & American Insurance Company y documento convenio caso Raúl Trías Conde.)

"11. Quedó establecido que el querellado goza de buena conducta en Río Piedras, sitio donde tiene establecida su oficina, habiendo declarado el Lic. Colón Brunet, que a la vez es Ministro Evangélico, y Luis Felipe Ortiz, comerciante del Barrio Cupey de Río Piedras en cuanto a la reputación del querellado, manifestando dichos testigos que según las relaciones que habían tenido con él y sus observaciones ésta era buena."

Las conclusiones de hecho están ampliamente sostenidas por la evidencia en autos. Los cargos imputados y probados contra el querellado son graves en extremo. Además, éstos fueron agravados por el hecho de que su reprobable conducta violó el sagrado ministerio de funcionario público. En vista de estos hechos, *se dictará resolución separándolo del ejercicio de la profesión de abogado-notario en esta Isla.* (¹)

---

(¹) Pérez Díaz levanta varias cuestiones de derecho. Todas son frívolas y ninguna amerita discusión.